## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

|                                      |     |                                          |
|--------------------------------------|-----|------------------------------------------|
| **WAYNE EDWARD HAILEY,**             | )   |                                          |
|       Plaintiff                      | )   |                                          |
|                                      | )   | Civil Action No.:  7:19-CV-00265         |
| **v.**                               | )   |                                          |
|                                      | )   |                                          |
| **B. MULLINS and H. SMITH,**         | )   | By:    Michael F. Urbanski               |
|       Defendants                     | )   | **Chief United States District Judge**   |

## <u>MEMORANDUM OPINION</u>

Wayne Edward Hailey, a Virginia inmate proceeding <u>pro se</u>, filed a complaint pursuant to 42 U.S.C. § 1983 alleging that defendants B. Mullins, M.D., and Happy Smith, M.D., violated his right under the Eighth Amendment to be free of cruel and unusual punishment. Both doctors are employed by the Virginia Department of Corrections (VDOC) at Wallens Ridge State Prison (WRSP), where Hailey is incarcerated. On November 20, 2019, Dr. Mullins and Dr. Smith filed a motion for summary judgment. ECF No. 27. Although Hailey did not respond to the motion, he has filed three motions for summary judgment, one motion for counter summary judgment, and a motion for a jury trial. Hailey's motions are construed as responses to defendants' motion for summary judgment. ECF Nos. 30, 32, 34, 36, 37.[1] Having considered the pleadings and the record, Dr. Mullins' and Dr. Smith's motion for summary judgment is **GRANTED**; Hailey's motions for summary judgment, counter summary

---

[1] In ECF Nos. 30 and 32 Hailey argues that defendants' motion for summary judgment was not timely filed. In ECF No. 34 Hailey responds to the arguments made in the motion for summary judgment. In ECF No. 36, Hailey reiterates his argument that the motion for summary judgment was filed late and also responds to the motion for summary judgment. In ECF No. 37 Hailey asserts that he is entitled to a jury trial.

judgment, and a jury trial are **DENIED**; and Hailey's claims are **DISMISSED** without prejudice.

<u>BACKGROUND</u>

### I. Factual Allegations

These facts are taken from Hailey's complaint and the exhibits submitted by Drs. Mullins and Smith and are construed in the light most favorable to Hailey.[2] On June 12, 2018, Hailey fell from his bunk at WRSP and sustained injuries. He was noted by staff at WRSP to have a jagged laceration on the left side of his head and his speech was slurred. He also was noted to be guarding his left side and shoulder and moaned in pain with movement. WRSP notes, ECF No. 28-1 at 63. [3]

Hailey was transported by ambulance to Lonesome Pine Hospital, which notified WRSP staff that, in addition to his head wound, he had fractured his left clavicle and left fourth rib. The staff at Lonesome Pine Hospital treated his head wound and transferred him to the trauma center at Carilion Roanoke Memorial Hospital (CRMH). Decl. of B. Mullins, M.D., ECF No. 28-1 at ¶ 17; WRSP notes, ECF No. 28-1 at 62-63. At CRMH, in addition to the fractured clavicle, Hailey was diagnosed with rib fractures, a thoracic compression fracture, and a head laceration. It was noted that he had intentionally "jumped from a high place" in an effort to harm himself. WRSP notes, ECF No. 28-1 at 13-14. Treatment notes indicate that while he was hospitalized, he refused to wear a prescribed brace, and refused pain medication and muscle relaxants. <u>Id.</u> at 61.

---

[2] <u>See</u> <u>Henry v. Purnell</u>, 652 F.3d 524, 531 (4th Cir. 2011) (requiring that in a summary judgment motion the evidence and all reasonable inferences must be drawn in the light most favorable to the nonmoving party).
[3] Hailey did not challenge the authenticity or accuracy of the records.

Hailey was discharged to prison authorities on June 14, 2018. According to CRMH discharge notes, he was issued a sling for his left arm and was told to follow up with "Dr. Seamon" in two weeks. Id. at 14. It was further noted that he was seen by a mental health care provider at CRMH for his alleged suicide attempt and the provider recommended Prozac and ongoing psychiatric treatment. Id.

Upon discharge from CRMH, Hailey returned to WRSP where he was under the care of Drs. Mullins and Smith. Dr. Mullins prescribed Motrin for pain related to his clavicle. Mullins Decl., ECF No. 28-1 at ¶ 19.; Decl. of Happy Smith, M.D., ECF No. 28-2 at ¶ 19; WRSP notes, ECF No. 28-1 at 60. Hailey did not complain of pain related to his clavicle for more than four months, or until October 20, 2018. During the same time frame, it was noted that he often was not wearing his brace. Mullins Decl., ECF No. 28-1 at ¶ 10; WRSP notes, ECF No. 28-1 at 48-60. He also refused pain medication and declined to be examined on multiple occasions. WRSP notes, ECF No. 28-1 at 49, 51, 53. On September 10, 2018, Hailey complained of pain and swelling in his left leg and Dr. Mullins assigned him to a lower bunk for 365 days. Id. at 52.

On October 20, 2018, Hailey asked about a raised area on his left clavicle and stated that it bothered him. He was aware that he could take Tylenol for pain. Id. at 48. Dr. Smith ordered an X-ray of the area and Hailey was placed on the doctor sick call list. The X-ray showed a healing, displaced, comminuted fracture involving the left mid-clavicle and subacute, slightly displaced, upper rib fractures. Mullins Decl, ECF No. 28-1 at ¶ 31; WRSP notes, ECF No. 28-1 at 50, 66. On October 30, 2018, Hailey saw Dr. Mullins, who prescribed Tylenol and Motrin and explained the results of the X-ray to him. Given Hailey's history of noncompliance

and self-harm, Dr. Mullins believed that elective surgery on the clavicle was too risky. Mullins Decl., ECF No. 28-1 at ¶ 37. WRSP notes, ECF No. 28-1 at 47.

On November 3, 2018, nursing notes indicate that Hailey stated to a staff member, "see this blood my cell is gonna be full of it. I'm going to cut my throat today." WRSP notes, ECF No. 28-1 at 46. On November 7, 2018 Hailey told Dr. Smith that in June 2018 he had gone to a Roanoke hospital to have his clavicle fixed but that he did not want it fixed and could live with it as it was. He asked for analgesic balm to help with his shoulder pain. Id. at 44.

From fall 2018 through spring 2019, Hailey was seen by medical staff on seven occasions for head lacerations. On October 17, 2018, he was treated for a small laceration on the top of his head but no cause was noted. Id. at 49. On January 8, 2019, he said he had fallen off his sink. Id. at 42. On January 23, 2019, he said he fell in his cell and hit the door. Id. at 41. On March 22, 2019, he reported falling off the bed. Id. at 39. On April 1, 2019, he was treated for a laceration on the crown of his head and abrasions on his lower leg after he "jumped off the sink." Id. at 35-36. On April 8, 2019, he was treated for a laceration on the back of his skull after falling backward off the sink. Id. at 34. On April 12, 2019, he was treated after he cut himself with a razor blade on the top of his head. Id. at 32.

On April 10, 2019, an appointment with an outside orthopedist was made for Hailey and on May 2, 2019 he was transported to the orthopedic center for an X-ray of his left upper extremity which revealed a fracture of the middle third of his left clavicle with hypertrophic healing. A CT scan was scheduled. Mullins Decl., ECF No. 28-1 at ¶¶ 53, 54, 56; WRSP notes, ECF No. 28-1 at 32. The CT scan, done on May 8, 2019, showed a chronic, left, midclavicular

fracture with a prominent bony callus forming around the fracture margins. There may have been a small, tenuous, bony bridge along the superior margin of the fracture. The scan also showed a subacute sternal fracture, an old healed rib fracture, and degenerative changes in Hailey's spine. Mullins Decl., ECF No. 28-1 at ¶ 57; WRSP notes, ECF No. 28-1 at 78.

On May 31, 2019, Hailey returned to the clinic for examination. He complained of pain in the clavicle and said he was ready to have it fixed. The doctor reviewed the CT scan and examined Hailey and stated that he would look at dates for possible surgical correction. Mullins Decl., ECF No. 28-1 at ¶ 59; WRSP notes, ECF No. 28-1 at 82. On June 17, 2019, Dr. Mullins told Hailey that the orthopedist had been considering surgery for his clavicle but had since changed his mind. Mullins Decl., ECF No. 28-1 at ¶ 62: WRSP notes, ECF No. 28-1 at 77.

On June 20, 2019, Hailey had another CT scan of his clavicle with no new findings and also had a follow-up examination at the outside orthopedic clinic. The physician recommended obtaining a bone stimulator for Hailey. Mullins Decl., ECF No. 28-1 at ¶ 63. On August 21, 2019, Dr. Smith ordered Hailey to receive bone stimulator treatment for his clavicle once a day for 20 minutes until September 18, 2019. Id. at ¶ 68.

Hailey began his bone stimulation therapy under the supervision of Drs. Mullins and Smith on August 21, 2019. Id. at ¶ 69. On October 29, 2019, doctors at the outside orthopedic clinic reported that the bone stimulation therapy was progressing successfully and said that "with evidence of healing, we would not recommend surgical correction at this time. Will f/u as needed." WRSP notes, ECF No. 28-1 at 87. Hailey had a full range of motion but continued to report pain and discomfort and requested surgery on his clavicle. Mullins Decl., ECF No. 28-1 at ¶ 73.

5

## II. Causes of Action

Hailey makes the following claims: (i) the defendants violated his Eighth Amendment right to be free from cruel and unusual punishment when Drs. Mullins and Smith decided not to operate on his broken collar bone and instead treated his injury with bone stimulation therapy; (ii) Drs. Mullins and Smith conspired against Hailey to prevent surgery on his injured clavicle. As relief, Hailey asks to have surgery performed on his clavicle and $50,000 in damages from defendants. Hailey is proceeding pro se and his pleadings are to be liberally construed. Erickson v. Pardus, 551 U.S. 89, 94 (2007).

## III. Applicable Law

### A. Summary Judgment Standard

Pursuant to Rule 56(a), the court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Glynn v. EDO Corp., 710 F.3d 209, 213 (4th Cir. 2013). When making this determination, the court should consider "the pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . [any] affidavits" filed by the parties. Celotex, 477 U.S. at 322. Whether a fact is material depends on the relevant substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. (citation omitted). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. If that burden has been met, the non-moving party

must then come forward and establish the specific material facts in dispute to survive summary judgment. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986).

In determining whether a genuine issue of material fact exists, the court views the facts and draws all reasonable inferences in the light most favorable to the non-moving party. Glynn, 710 F.3d at 213 (citing Bonds v. Leavitt, 629 F.3d 369, 380 (4th Cir. 2011)). Indeed, "[i]t is an 'axiom that in ruling on a motion for summary judgment, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" McAirlaids, Inc. v. Kimberly–Clark Corp., 756 F.3d 307, 310 (4th Cir. 2014) (internal alteration omitted) (citing Tolan v. Cotton, 134 S. Ct. 1861, 1863 (2014) (per curiam)). Moreover, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Anderson, 477 U.S. at 255. The non-moving party must, however, "set forth specific facts that go beyond the 'mere existence of a scintilla of evidence.'" Glynn, 710 F.3d at 213 (quoting Anderson, 477 U.S. at 252). The non-moving party must show that "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Res. Bankshares Corp. v. St. Paul Mercury Ins. Co., 407 F.3d 631, 635 (4th Cir. 2005) (quoting Anderson, 477 U.S. at 249). "In other words, to grant summary judgment the [c]ourt must determine that no reasonable jury could find for the nonmoving party on the evidence before it." Moss v. Parks Corp., 985 F.2d 736, 738 (4th Cir. 1993) (quoting Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 124 (4th Cir. 1990)). Even when facts are not in dispute, the court cannot grant summary judgment unless there is "no genuine issue as to the inferences to be drawn from" those facts. World-Wide Rights Ltd. P'ship v. Combe Inc., 955 F.2d 242, 244 (4th Cir. 1992).

Ordinarily, a prisoner proceeding pro se in an action filed under § 1983 may rely on the detailed factual allegations in his verified pleadings in order to withstand a motion for summary judgment by the defendants that is supported by affidavits containing a conflicting version of the facts. Davis v. Zahradnick, 600 F.2d 458 (4th Cir. 1979). Thus, a pro se plaintiff's failure to file an opposing affidavit is not always necessary to withstand summary judgment. While the court must construe factual allegations in the nonmoving party's favor and treat them as true, however, the court need not treat the complaint's legal conclusions as true. See, e.g., Estate Constr. Co. v. Miller & Smith Holding Co., 14 F.3d 213, 217-18 (4th Cir. 1994); see also, Custer v. Sweeney, 89 F.3d 1156, 1163 (4th Cir. 1996) (court need not accept plaintiff's "unwarranted deductions," "footless conclusions of law," or "sweeping legal conclusions cast in the form of factual allegations") (internal quotations and citations omitted).

### B. Liability under 42 U.S.C. §1983

To prevail on a claim for a civil rights violation under 42 U.S.C. § 1983, a plaintiff must establish (1) that he has been deprived of a right, privilege or immunity secured by the Constitution or laws of the United States and (2) that the conduct about which he complains was committed by a person acting under color of state law. Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 658 (4th Cir. 1998).

Claims brought against defendants in their official capacities are not cognizable in § 1983 lawsuits because neither a state nor its officials acting in their official capacities are persons for purposes of § 1983. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). Thus, a claim brought against an official in his or her official capacity is not considered a suit against the official, but rather a suit against the official's office. Because the Eleventh

Amendment prohibits courts from entertaining an action against the state, <u>Alabama v. Pugh</u>, 438 U.S. 781, 782 (1978), it also prohibits courts from considering claims against defendants in their official capacities. <u>Cromer v. Brown</u>, 88 F.3d 1315, 1332 (4th Cir. 1996).

However, a plaintiff may seek prospective injunctive relief against state defendants in their official capacities. <u>Will v. Michigan Dept. of State Police</u>, 491 U.S. 58, 71 (1989); <u>Graham v. Kentucky</u>, 473 U.S. 159, 167 n. 14 (1985). "To ensure enforcement of federal law . . . the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law." <u>Frew ex rel. Frew v. Hawkins</u>, 540 U.S. 431, 437 (2004).

### C.  Eighth Amendment Deliberate Indifference Standard

The Eighth Amendment to the United States Constitution provides protection for incarcerated individuals and guarantees them the right to be free from cruel and unusual punishment while under mandated supervision of the state. <u>See</u> <u>Estelle v. Gamble</u>, 429 U.S. 97 (1976). The purpose of the Eighth Amendment is to proscribe punishments which are incompatible with "the evolving standards of decency that mark progress of a maturing society." <u>Id.</u> at 102. Within the Eighth Amendment, there is a requirement to provide medical care to incarcerated individuals. <u>Id.</u> at 103. "[A] prison official's deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." <u>Scinto v. Stansberry</u>, 841 F.3d 219, 225 (4th Cir. 2016) (quoting <u>Estelle</u>, 429 U.S. at 104).

To prevail on an Eighth Amendment constitutional claim alleging the denial of medical care, an incarcerated individual must demonstrate that (1) he possessed a serious medical need and (2) that prison officials or those responsible for attending to this need were deliberately

indifferent in addressing the individual's medical need. Id. at 106. A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Godfrey v. Russell, No. 7:14CV00476, 2015 WL 5657037, at *6 (W.D. Va. Sept. 24, 2015), aff'd, 667 F. App'x 68 (4th Cir. 2016) (quoting Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008)).

In order to satisfy the second requirement, "treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). Prison officials are deliberately indifferent if they know of but choose to disregard an inmate's serious medical need. See Farmer v. Brennan, 511 U.S. 825, 844-45 (1994). First, the evidence must show that the prison official subjectively recognized a serious medical need. A medical need serious enough to give rise to a constitutional claim involves a condition that places the inmate at a substantial risk of serious harm, usually loss of life or permanent disability, or a condition for which lack of treatment perpetuates severe pain. See Farmer, 511 U.S. at 832-35; Sosebee v. Murphy, 797 F.2d 179, 182-83 (4th Cir. 1986); Loe v. Armistead, 582 F.2d 1291, 1296-97 (4th Cir. 1978); Rush v. Vandevander, 2008 WL 495651, at *1 (W.D. Va. Feb. 21, 2008).

Second, the evidence must show that the prison official subjectively recognized that his actions were "inappropriate in light of that risk." Rich, 129 F.3d at 340 n.2. It is insufficient that the official should have recognized that his actions were inappropriate. See Brown v. Harris, 240 F.3d 383, 390-91 (4th Cir. 2001).

Claims of mere negligence or medical malpractice do not rise to the level of deliberate indifference. See James v. Dep't of Corrections, 230 F. App'x 195 (3d. Cir. 2007). In addition,

10

disagreements between incarcerated individuals and medical personnel over a diagnosis and treatment plan are not cognizable claims under the Eighth Amendment. See Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975); Bowring v. Godwin, 551 F.2d 44, 48 (4th Cir. 1977) (finding "the essential test" for constitutionally required health treatment "is one of medical necessity and not simply that which may be considered merely desirable"); Germain v. Shearin, 531 F. App'x 392, 395 (4th Cir. 2013) (noting that deliberate indifference standard is not satisfied by showing negligence or disagreement concerning questions of medical judgment).

## IV. Application and Analysis

## A. Deliberate Indifference

The court finds that Hailey's broken clavicle qualifies as a serious medical need and satisfies the first objective prong of an Eighth Amendment claim. See Scott v. Morgan, No. 4:14CV01853JAR, 2016 WL 3971394, at *4 (E.D. Mo. July 25, 2016) (finding a broken clavicle to be a serious medical need). Turning to the subjective prong of the Farmer test, the court finds that Hailey has not shown that Dr. Mullins or Smith were deliberately indifferent to the serious medical need in treating his injured clavicle.

Records from WRSP show that Hailey was seen and treated by medical staff at WRSP and also by an outside orthopedist group. After Hailey fell and injured his clavicle, Dr. Mullins examined him more than fifteen times. Dr. Mullins reviewed Hailey's records, prescribed pain medication, ordered living accommodation changes to reduce pain and likelihood of self-harm, referred Hailey to orthopedic specialists for diagnostic tests and examinations, and answered Hailey's questions and concerns regarding his injury and ailments. Thus, the court finds Dr. Mullins responded appropriately to Hailey's injuries and allegations of pain and was

not deliberately indifferent to his serious medical needs. See Martins v. Akers, No. 7:11CV00252, 2012 WL 3133683, at *6 (W.D. Va. July 31, 2012) (finding that plaintiff's disagreement with treatment plan insufficient to state an Eighth Amendment claim when doctor ordered an MRI to determine the extent of plaintiff's ankle injury; decided against surgery based on MRI results; recommended physical therapy; and prescribed medication and stretching routines for pain); Garabedian v. Lanteigne, No. 1:08CV1221 (AJT/TRJ), 2010 WL 785311, at *5 (E.D. Va. Mar. 3, 2010) (entering summary judgment for defendant doctor when he decided to forego surgery because plaintiff's injury was healing well; he believed another surgery would not be beneficial because of the plaintiff's noncompliance with his treatment plan; plaintiff engaged in fights with other inmates; and plaintiff declined to immobilize his arm in a sling at all times); and Jackson v. Metiko, No. 5:06CT59FL, 2008 WL 4279694, at *2, *10 (E.D.N.C. Sept. 15, 2008) (finding doctor not deliberately indifferent in treatment of plaintiff's clavicle fracture because he ordered x-rays on three occasions; prescribed medications to treat plaintiff's pain; submitted requests for outside orthopedic consultations; and attempted to pursue alternative treatments in the form of physical therapy and natural healing).

Nor does Dr. Mullins' decision to pursue bone stimulation therapy instead of surgery for Hailey's injured clavicle indicate that he was deliberately indifferent. The outside orthopedist examined Hailey and relied on X-rays and CT scans to develop a treatment plan. He initially recommended surgery, but later recommended bone stimulation therapy. After consulting with the outside orthopedist, Drs. Mullins and Smith pursued bone stimulation therapy in place of surgery. The decision to rely on the recommendation of the outside

physician does not demonstrate that Dr. Mullins was deliberately indifferent to Hailey's serious medical needs. In addition, the bone stimulation therapy was successful in that it showed healing of the clavicle.

Dr. Smith's actions largely mirrored those of Dr. Mullins. Dr. Smith saw Hailey on more than five occasions, evaluated Hailey's broken clavicle, prescribed medications, and ordered Hailey to receive bone stimulation therapy. While the treatment plan chosen and overseen by Dr. Smith in conjunction with Dr. Mullins may not have been the one preferred by Hailey, the court finds that both doctors responded appropriately to Hailey's injury and complaints of pain and their actions did not involve the unnecessary and wanton infliction of pain and suffering. Scinto, 841 F.3d 219 at 225.

In sum, evaluating the totality of the circumstances surrounding the treatment of Hailey's injured clavicle in the light most favorable to him, the court concludes that no reasonable jury could find on the evidence before it that Drs. Mullins and Smith acted with deliberate indifference to Hailey's serious medical need. Therefore, the doctors' motion for summary judgment is **GRANTED** with regards to Hailey's 42 U.S.C. § 1983 Eighth Amendment claim.

### B. Conspiracy Claim

Hailey alleges a conspiracy on the part of Drs. Mullins and Smith to remove him from CRMH and return him to WRSP in an effort to delay and prevent his treatment. He claims that the doctors called CRMH and told hospital officials that they were going to "fix [his]

bone" at the prison. However, the discharge summary provided by CRMH does not indicate that either doctor called the hospital to obtain Hailey's release and does not indicate that surgery was contemplated or warranted. At discharge he was issued a sling for his left arm and was told to follow-up in two weeks. WRSP notes, ECF No. 28-1 at 14.

An essential element of any conspiracy claim is an agreement among the co-conspirators to deprive the plaintiff of his constitutional rights. Ballinger v. North Carolina Agricultural Extension Service, 815 F.2d 1001 (4th Cir. 1987), cert. denied, 484 U.S. 897 (1987). To succeed on his conspiracy claim, Hailey must demonstrate the existence of an agreement and a meeting of the minds. Murdaugh Volkswagen v. First National Bank, 639 F.2d 1073 (4th Cir. 1981). Hailey needs to allege facts showing that Drs. Mullins and Smith shared a "unity of purpose or common design" to injure or deprive him of medical care. American Tobacco Co. v. United States, 328 U.S. 781 (1946).

As discussed above, Hailey does not meet his burden on summary judgment of showing that Drs. Mullins and Smith violated his right to be free of cruel and unusual punishment under the Eighth Amendment. Because he cannot show that his Eighth Amendment right was violated, he similarly cannot show that the doctors conspired to violate his right. The only evidence in the record related to his discharge from CRMH is the discharge summary cited above. Hailey's claim that the doctors called CRMH to obtain his release in an effort to keep him from having surgery is a conclusory allegation without factual substantiation. Therefore, Drs. Mullins' and Smith's motion for summary judgment is **GRANTED** with regard to the conspiracy claim.

### C.  Request for Injunctive Relief

Hailey asks the court to order surgery for his injured clavicle. However, "[i]t is well-established that absent the most extraordinary circumstances, federal courts are not to immerse themselves in the management of state prisons or substitute their judgment for that of the trained penological authorities charged with the administration of such facilities." Taylor v. Freeman, 34 F.3d 266, 268 (4th Cir. 1994). A mandatory injunction is warranted in only the most extraordinary circumstances and should not be issued unless the facts and law clearly favor the moving party. Id. at 270 n. 2.

Although Hailey believes that he needs surgery on his clavicle, he has submitted no evidence showing that he will suffer irreparable harm without the test or the surgery. See Zuniga v. University Health System, 71 F. App'x 293, 293-94 (5th Cir. 2003) (per curiam) (affirming denial of preliminary injunction where inmate submitted no medical opinion showing that he would suffer irreparable harm if he were not given orthopedic shoes). Under these circumstances, the court declines to order Drs. Smith or Mullins to take a particular action with regard to the treatment of Hailey's clavicle. See Bowring, 551 F.2d at 47-48 ("The right to treatment is, of course, limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical necessity and not simply that which may be considered merely desirable."); Lewis v. North Carolina Department of Public Safety, No. 1:15-cv-284-FDW, 2018 WL 310142, *6 (W.D.N.C. 2018) (noting that a plaintiff is not entitled to a particular course of medical treatment or the treatment of his choice.)

As discussed above, Hailey's clavicle pain has been treated with medication and bone stimulation therapy. Although the court is sympathetic to the pain Hailey experiences, he has not overcome the heavy burden of establishing that injunctive relief in the form of an order

to the defendants to authorize surgery on his clavicle is warranted. Accordingly, his request for injunctive relief is **DENIED**.

### V. Conclusion

For the reasons stated above, the Court concludes that there is no genuine dispute of material fact from which a reasonable jury could find that Drs. Mullins and Smith violated Hailey's Eighth Amendment right to be provided adequate medical treatment for his broken left clavicle. Accordingly, the motion for summary judgment filed by defendants Dr. Mullins and Dr. Smith, ECF No. 27, is **GRANTED** and the claims against them are **DISMISSED**. Hailey's motions for summary judgment, counter summary judgment, and for a jury trial, ECF Nos. 30, 32, 34, 36, 37, are **DENIED**. An appropriate order will be entered.

It is so **ORDERED**.

**ENTERED:**   July 21, 2020

Mike Urbanski
cn=Mike Urbanski, o=US Courts,
ou=Western District of Virginia,
email=mikeu@vawd.uscourts.gov, c=US
2020.07.21 14:40:08 -04'00'

**Michael F. Urbanski**
**Chief United States District Judge**